**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL SAVELY,<br><br>              Plaintiff,<br><br>v.<br><br>MTV MUSIC TELEVISION, VIACOM d/b/a MTV NETWORKS, JOHN DOES (1-5) (said names being fictitious), and ABC CORP. (said entities being fictitious),<br><br>              Defendant. | Civil Action No. 2:11-cv-1021 (SDW) (MCA) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT**

                                            **MARK & GALUSHA, LLC**
                                            403 King George Road
                                            Suite 201
                                            Basking Ridge, New Jersey 07920
                                            (908) 626 -1001
                                            (908) 626 -1003 - Facsimile
                                            Attorneys for Plaintiff,
                                            Michael Savely

On the brief and of counsel:

Alyson E. Galusha, Esq.
Jamison M. Mark, Esq.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT .......................................................................1

STATEMENT OF FACTS ...............................................................................1

LEGAL ARGUMENT ......................................................................................5

    I. DEFENDANTS' RULE 12(b)(6) MOTION TO
    DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF
    HAS PROPERLY PLED ALL CLAIMS ......................................................5

    II.  INVASION OF PRIVACY CLAIM HAS BEEN
    SUFFICIENTLY PLED ................................................................................6

        A.  AS TO FIRST COUNT – APPROPRIATION OF NAME
        LIKENESS OR IDENTITY .................................................................7

        B.  AS TO SECOND COUNT – PUBLICATION OF
        PRIVATE FACTS ................................................................................9

        C.  AS TO THIRD COUNT – FALSE LIGHT .......................................10

CONCLUSION ................................................................................................12

## TABLE OF AUTHORITIES

Bell Atlantic v. Twombly, 550 U.S. 544 ..................................................................5

Bisbee v. John C. Conover Agency, 186 N.J. Super. 335 (App. Div. 1982).........11

Canessa v. J.I. Kislak, Inc., 97 N.J. Super. 327 (Law Div. 1967) ....................... 6-8

Castro v. NYT Television, 370 N.J. Super. 282 (App. Div. 2004)...................... 6-8

Evacho v. Fisher, 423 F.3d 347 (3d Cir. 2005) .......................................................5

Faber v. Condecor, Inc., 195 N.J. Super. 81 (App. Div. 1984) ........................... 6-8

Gomez v. Toledo, 446 U.S. 635, 636 (1980)...........................................................5

Jeffries v. Whitney E. Houston Acad. P.T.A.,
2009 WL 2136174 (N.J. Super. A.D.) .....................................................................8

Ransom v. Marazzo, 848 F.2d 398 (3d Cir. 1988) ..................................................5

Romaine v. Kallinger, 109 N.J. 282 (1988).............................................................9

Tellado v. Time-Life Books, 643 F. Supp. 904 (1986) ............................................8

**Other Authorities**

Fed. R. Civ.P. 8(a)(2)...............................................................................................5

Restatement Second of Torts §652B .......................................................................6

Restatement Second of Torts §652C .......................................................................7

Restatement Second of Torts §652D .......................................................................9

Restatement Second of Torts §652E.................................................................10, 11

## INTRODUCTION

Plaintiff, Michael Savely, submits this Memorandum of Law in opposition to Defendants' motion to dismiss Plaintiff's Verified Complaint.

## PRELIMINARY STATEMENT

Michael Savely, a/k/a Mike Alaska (hereinafter referred to as "Plaintiff" or "Savely"), filed a three-count Verified Complaint, asserting the following causes of action against Defendants, MTV Music Television and Viacom d/b/a MTV Networks (collectively referred to as "Defendants" or "MTV"): 1) Invasion of Privacy- Appropriation of Name, Likeness or Identity; 2) Invasion of Privacy – Publication of Private Facts; and 3) Invasion of Privacy – False Light. Savely's Verified Complaint contains detailed factual allegations to support his claims, and therefore Defendants' motion must be denied as a matter of law.

## STATEMENT OF FACTS TO SUPPORT PLAINTIFF'S CLAIMS

Plaintiff, Michael Savely a/k/a "Mike Alaska," is a fixture in New York City subway stations. *See* Savely Complaint attached hereto as **Exhibit A**, ¶6 . Savely performs his signature drum routines in New York City subway stations on a daily basis. Despite the fact that Savely performs within the subway stations, he has gained significant fame and notoriety - - not just in the New York City geographic - - but worldwide. Savely has performed in numerous countries, and in many of the world's largest and most popular venues, including but not limited to Madison Square Garden during half-time at a New York Knicks' game. *See* **Exhibit A**, ¶7, 8 and 9.

1

Savely employs a very unique drumming style and is not only known for his musical skills and his unique physical appearance, but also for his ability to add a visual aspect to his performance through stick tricks, pyrotechnic drumming and fire-breathing. *See* **Exhibit A**, ¶10.  As such, Savely is an instantly recognizable figure.  *See* **Exhibit A**, ¶11.

During November 2010, Savely was performing his drum routine on a New York City Subway platform when he was approached by several gentlemen who identified themselves as employees of MTV. *See* **Exhibit A**, ¶12, 13. MTV's employees requested permission to film Savely at this time for MTV. *See* **Exhibit A**, ¶14.  As Savely wished to protect his name and image, he requested a contract and/or waiver from the MTV employees. *See* **Exhibit A**, ¶15.  Accordingly, Savely was provided with a contract and, after careful review, decided that he would not sign the contract and did not want to be filmed. *See* **Exhibit A**, ¶16.  Savely verbally advised MTV's employees of his wishes to not be included in the film they were producing. *See* **Exhibit A**, ¶17.  Savely has invested years mastering his craft and promoting his image in a way that is welcoming to audiences of all ages and was concerned that he would be portrayed in a false light and that the footage would misrepresent his connections with other artists whose style conflict with the one he has developed. *See* **Exhibit A**, ¶18, 19.

Specifically, Savely was concerned with being associated with artists who used profane language and conducted themselves in a less conservative fashion than Savely. *See* **Exhibit A**, ¶20. This was particularly discerning for Savely as a significant amount of his income is generated through lessons he provides, mostly to children, with parents who would not expose them to artists of a certain genre. *See* **Exhibit A**, ¶21.  Savely

understands that the reason many of the parents of the students he teaches employ his services is because they can trust him to provide their children with something modern yet not corrupt. *See* **Exhibit A**, ¶22. Obviously, having his brand/likeness associated with the "wrong" artist could easily result in the decline of his student-base and cause Savely to lose a significant amount of future business as well. *See* **Exhibit A**, ¶23. Savely's anxiety over the intent of MTV's employees was further increased when MTV's employees would not advise how the footage obtained was going to be used and with which artist(s) it would be associated. *See* **Exhibit A**, ¶24.

In December 2010, approximately three weeks later, Savely was approached by a woman who advised him that she recently saw his performance on MTV. *See* **Exhibit A**, ¶25. The next day, another individual approached Savely and conveyed the same information. *See* **Exhibit A**, ¶25. Confused and concerned, Savely quickly located the aforementioned clip of his performance on the internet through Google web-browsing services. *See* **Exhibit A**, ¶26. Savely discovered that there was indeed footage of him performing on the very day he was approached by MTV's employees and expressly denied them the right to film or air any footage of him. *See* **Exhibit A**, ¶27. The video-clip of Savely was shown on an MTV program entitled Nickey Manaj: My Time Now. *See* **Exhibit A**, ¶28.

Not only does Savely believe that his reputation and livelihood were negatively affected as a result of the fraudulent behavior of Defendants, he did not receive any credit or financial compensation for the use of his music and image. *See* **Exhibit A**, ¶29. Further, the artist, Nickey Manaj, has a very different style than Savely, and her music and brand reaches a very different audience from that of Savely's. *See* **Exhibit A**, ¶30.

Ms. Manaj dresses provocatively, uses profanity and glories a specific lifestyle contrary to that of Savely and, more importantly, to that of Savely's students and their parents. *See* **Exhibit A**, ¶31. Finally, the footage obtained consists of poor quality images and sounds to the extent that it reflects poorly on Savely's talent as a drummer and performer. *See* **Exhibit A**, ¶32.

As a direct result of the negligent actions of Defendants and Defendants' employees, Savely has been greatly humiliated and suffered loss. *See* **Exhibit A**, ¶33. Savely has since received negative feedback in person and from his fans on his Facebook page. *See* **Exhibit A**, ¶34. Savely's appearance on MTV was the common theme for all the negative feedback as it was perceived that Savely was now associated with or supporting Nickey Manaj. *See* **Exhibit A**, ¶34. Savely has seen a decline in his student-base amongst current students and prospective students and has experienced a decrease of sales in t-shirts supporting his image and artistry. *See* **Exhibit A**, ¶35, 36. As the footage has already been captured and subsequently placed on the internet, there is no way of retrieving the footage and, therefore, the damage has been done. *See* **Exhibit A**, ¶37. It wasn't until after this lawsuit was filed, that Savely believes the footage was removed from MTV.

Defendants seem to miss the point entirely and conveniently skip over salient allegations set forth in the Verified Complaint: Savely was asked by MTV employees to sign a waiver, permitting them to use footage of him on MTV. **HE REFUSED**. Savely refused to sign the waiver and expressly directed the MTV employees NOT TO USE THE FOOTAGE of him. Instead, the footage of him appeared on a national network! Without obtaining Plaintiff's written authorization or consent, Defendants knowingly,

4

intentionally, wrongfully and illegally used Plaintiff's image and likeness in the production of the aforementioned television show and broadcast the same on national television. The Defendants' liability for invasion of privacy cannot be more clear.

## LEGAL ARGUMENT

### I. DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF HAS PROPERLY PLED ALL CLAIMS

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court may only dismiss a complaint if it appears certain that the plaintiff cannot prove any set of facts in support of his or her claims which would entitle him or her to relief. *See, e.g.,* Ransom v. Marazzo, 848 F.2d 398, 401 (3d Cir. 1988). In a motion to dismiss, all well-pled allegations are accepted as true, and reasonable inferences are drawn in the plaintiff's favor. Gomez v. Toledo, 446 U.S. 635, 636 (1980); Evacho v. Fisher, 423 F.3d 347 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

Defendants simply ignore these constraints, refuse to accept Plaintiffs' allegations as true (or even acknowledge Plaintiff's allegations) and make numerous unsupported factual representations throughout their motion that seek to undermine Plaintiffs' factual allegations. While Defendants' factual representations are, as a matter of law, irrelevant

to resolving their Rule 12(b)(6) Motion, it is worth noting that their representations are particularly misleading and unsubstantiated.

## II. INVASION OF PRIVACY CLAIM HAS BEEN SUFFICIENTLY PLED

The tort of invasion of privacy based upon the unreasonable intrusion upon the seclusion of another is set forth in the Restatement (Second) of Torts, which states, in pertinent part: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts, § 652B (1977).

"To establish liability for this tort, a plaintiff must show that the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man." Castro v. NYT Television, 370 N.J. Super. 282 (App. Div. 2004). One illustration of this tort is provided in the comments to the Restatement is a newspaper reporter taking a plaintiff's picture in a hospital room, against her wishes. *See* Restatement (Second) of Torts, § 652B comment b, illustration 1 (1977).

Many cases in New Jersey in which the right of privacy have been protected are instances where plaintiff has not consented or signed a waiver for use, and defendants have used the material for their own commercial benefit. Canessa v. J.I. Kislak, Inc., 97 N.J. Super. 327, 358 (App. Div. 1967). In this case, Plaintiff did not consent to his image being used and, in fact, expressly refused to sign a waiver.

In Faber v. Condecor, Inc., 195 N.J. Super. 81 (App. Div. 1984), even though a father signed a release which authorized the family's photograph to be used in photography book, the father did not waive the family's right to object to the photographer's use by

6

manufacturer of picture frames displayed for sale. The father testified that the use of the photograph hurt his credibility in his job and gave appearance of conflict of interest. Id. The Court found that the family's allegation that the manufacturer of the picture frames had appropriated their likeness for their own benefit, which established a cause of action for invasion of privacy. Id.

    A.        **As to First Count- Appropriation of Name, Likeness or Identity**

The foundation for this tort is recognition that a person has an interest in their name or likeness "in the nature of a property right." Restatement (Second) of Torts, §652C comment a. Under New Jersey common law, defendant would be liable for the tort of misappropriation of name, likeness or identity if defendant's use of plaintiff's likeness was for a predominantly commercial purpose, *i.e.*, if defendant was seeking to capitalize on defendant's likeness for purposes other than the dissemination of news or information. Castro v. NYT Television, 370 N.J. Super. 282, 297 (2004).

In the Castro case, the subject videotaped footage was not alleged to have been for any specific promotional purpose, which was the basis for the Court's decision. To the contrary, in this case, Savely has specifically pled that the videotaped footage of him was used for specific promotional purposes, and used without his consent. Therefore, Savely's case is more similar to the cases of Canessa v. J.I. Kislak, 97 N.J. Super. 327 (1967) and Faber v. Condecor, Inc., 195 N.J. Super. 81 (1984).

In the Canessa case, the Court found that plaintiff's claim, when based on the appropriation of their likeness and their name for defendant's commercial benefit, is an action for invasion of their property rights. Canessa at 351. In the Canessa case, a real

7

estate agent assisted a family in finding a home. The agent contacted the Jersey Journal and asked if they would be interested on running a story on the family. The family granted their permission to run the story, which included a picture of the family. Subsequently, the real estate agent used the family's picture on advertising brochures. Plaintiff brought a suit for misappropriation of likeness. The Court denied defendant's motion for summary judgment and found that plaintiff had properly made a case for misappropriation and invasion of privacy. Canessa, 97 N.J. Super. 327.

In the Faber, supra., the Court found that plaintiff's photograph had been inserted into lockets which were on display, and although not being used for "advertising purposes" or "trade purposes," and that the photograph had been put in the lockets only to illustrate the use thereof, it was obviously being used to make the lockets more attractive and for display. Faber at 88, 89. Furthermore, the Court found that there was no consent for that commercial use.

Furthermore, the Court has opined:

> "While one who is a public figure or is presently newsworthy may be the proper subject of news or informative presentation, the privilege does not extend to commercialization of his personality through a form of treatment distinct from the dissemination of news or information."

Tellado v. Time-Life Books, Inc., 643 F. Supp. 904 (1986).

The Tellado Court further found that New Jersey law does not limit the cause of action of misappropriation to famous individuals. Tellado, 643 F. Supp. 904.

The Court has further found that a claim for misappropriation of likeness may include mental distress and injury to feelings, and not just an injury to property. Jeffries v. Whitney E. Houston Acad. P.T.A., 2009 WL 2136174 (N.J. Super. A.D.).

8

In this case, Savely, a fixture in New York City subway stations, who has gained fame and notoriety worldwide, and has performed in Madison Square Garden during half-time at a New York Knicks game, was approached by MTV employees, while performing in the New York subway, videotaped and asked to sign a waiver. Savely advised the MTV employees that he did not want to be included in the film they were producing, and Savely refused to sign the waiver. Despite Savely's express refusal, MTV broadcast footage of Savely on MTV for the entire MTV audience to view through various types of media including but not limited to television and internet. The use of the footage was not newsworthy, nor was it part of an informative presentation. It was used by a television show entitled Nickey Manaj: My Time Now, which is an artist documentary specifically geared towards the fan base of Ms. Manaj and in which the footage of Savely would not have impacted the compilation of same. Further, Savely was not compensated for this commercial use. Additionally, this commercial use caused Savely humiliation and distress.

B.     As to Second Count-Publication of Private Facts

A private facts claim is actionable upon a plaintiff's demonstration that: 1) the matters revealed were private; 2) that dissemination of such facts would be offensive to a reasonable person; and 3) there is no legitimate interest of the public facts publicized. Romaine v. Kallinger, 109 N.J. 282, 297 (1988). "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his [or her] privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement (Second) of Torts, supra, §652D.

In this matter:

1. Savely's life was a "private fact" improperly publicized by MTV.

2. Based upon the totality of the circumstances, the publication of Savely's image on MTV was highly offensive.

3. There was no legitimate interest of the facts publicized.

Defendants seem to completely ignore the fact that Savely refused to sign a waiver to be filmed for the MTV program and yet ended up on **international television**. Defendants also ignore the fact that Savely's performance appeared on a program entitled Nickey Manaj: My Time Now. Savely's image on the program was highly offensive to him. There can be no argument that the footage of Savely was not newsworthy or of legitimate concern to the public. In fact, Savely alleges that the footage of him was humiliating, offensive and portrayed him in a false and disparaging light. Thus, Savely has adequately pled that the publication at issue can be perceived as highly offensive to a reasonable person and as such, has satisfied this requisite element of publication of private facts.

C. As to Third Count – False Light

The interest protected by the duty not to place another in a false light is the interest "in not being made to appear before the public in an objectionable false light or false position, or in other words, otherwise than as he is." Restatement (Second) of Torts § 652 E, comment b. The fundamental requirement of the false light tort is that the disputed publicity be, in fact, false or else **"at least have the capacity to give rise to a**

**false public impression as to the plaintiff**." Bisbee v. John C. Conover Agency, 186 N.J. Super. 335, 339 (App. Div. 1982). (emphasis added).

A Plaintiff must show that the publicity was of a character "highly offensive to a reasonable person." Restatement (Second) of Torts, § 652E. In making this determination, the court "should not consider words or elements in isolation, but should view them in the context of the whole article[.]" Ibid.

In this case, Defendants requested that Plaintiff sign a waiver and he refused. Nonetheless, Plaintiff was filmed and the footage obtained was broadcast on international television. To add insult to injury, the footage obtained was shown on an MTV program entitled Nickey Manaj: My Time Now. Savely has alleged that his footage on this program was highly offensive to him, as Ms. Manaj dresses provocatively, uses profanity and glorifies a specific lifestyle contrary to that of Plaintiff, and more importantly, to that of Plaintiff's students and their parents. Additionally, the footage consisted of poor quality images and sounds to the extent that it reflected poorly on Plaintiff's talent as a drummer and performer. Therefore, the footage clearly has the capacity to give rise to a false public impression of Plaintiff and, as he alleges, portrays him in a false light.

## CONCLUSION

For the foregoing reasons, and all others apparent to the Court, Defendants' <u>Rule 12(b)</u> Motion to Dismiss should be denied.

Dated: April 13, 2011                                     Respectfully Submitted,

                                                        <u>*s/ Alyson E. Galusha*</u>
                                                        Alyson E. Galusha